

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN - 1 2007

CLERK, U.S. DISTRICT COURT

By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STEVE SANDS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | NO. 4:06-CV-239-A |
| § | |
| WAL-MART STORES, INC., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
and
ORDER

On April 4, 2007, defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), moved for summary judgment on all claims asserted by plaintiff, Steve Sands ("Sands"), in this suit.  Having considered the motion, the response, the reply, the summary-judgment evidence, and the applicable legal authorities, the court concludes that the motion should be granted.

I.

Sands's Claim

On April 7, 2006, Sands filed his original complaint in this court.  His sole claim is that Wal-Mart terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA").

II.

The Motion for Summary Judgment

Wal-Mart maintains that Sands cannot establish a prima-facie case of age discrimination under the ADEA.  Further, even if he could, Wal-Mart contends that it had a legitimate, non-discriminatory reason for terminating Sands's employment.

III.

### Undisputed Facts[1]

Wal-Mart has a policy prohibiting harassment and other inappropriate conduct by its employees.  Sands was an investigator in Wal-Mart's loss-prevention department unit until September 2005, when he was fired for allegedly violating this anti-harassment policy.  At the time he was fired, Sands was forty-five years old.

In August 2005, Syzette Brod ("Brod"), a loss-prevention associate, reported to Michael Broussard, a loss-prevention manager, that Sands made her feel uncomfortable at a recent shareholder meeting at which they were both assigned to provide security,.  Brod stated that Sands had been romantically involved with several loss-prevention associates, one of whom, Lisa Blackwell ("Blackwell"), was her roommate at the meeting.  She indicated that Sands may have behaved inappropriately toward Blackwell.  Michael Ingersoll ("Ingersoll"), a regional loss-prevention manager, was tasked to investigate these allegations. At the time of the investigation, Ingersoll was forty-three years old.

Ingersoll first interviewed Blackwell.  She told him that she had an extramarital affair with Sands but broke it off after her husband found out and angrily contacted Sands to tell him,

---

[1]The court acknowledges that Sands disputes certain allegations against him that are described in this section.  Sands, however, does not appear to dispute that these allegations were reported to Wal-Mart.  The court has tried to word this section consistent with this distinction.

among other things, to stop seeing his wife and to pay the
exorbitant phone bills that the affair had generated.  According
to Blackwell, after her husband contacted Sands, Sands contacted
her and threatened to kill her husband.  Blackwell also told
Ingersoll that, after she ended the relationship, Sands continued
to call and text message her[2] and asked her to come to his hotel
room.  When she refused, Blackwell said Sands continued to harass
her by, for example, stopping by her work station, looking at her
suggestively, and licking his lips.  Blackwell submitted a
written statement memorializing what she had told Ingersoll.[3]

On August 30, 2005, Ingersoll interviewed Brod.  She
reported, that during the 2004 shareholder meeting, she told
Sands that some employees had been very rude to her.  Sands told
Brod he would handle it.  Brod told Blackwell about reporting
this to Sands.  Blackwell told her that Sands would not do
anything about the situation, because he had been intimate with
two of the employees about whom she was complaining.[4]  Brod
further told Ingersoll that Blackwell showed her sexually
suggestive text messages that Sands had sent Blackwell.

---

[2]Blackwell later provided Ingersoll with one of the text messages Sands
had sent her.  She had saved on her cellular phone.  It began, "Tonight
sweety?, to which she replied, "No."  He responded, "Ok sweety, just needed to
know."  See  Pl.'s App. at 22.

[3]In her written statement, Blackwell also reported that, sometime after
the affair had ended, she had reported to Roger Parish, a loss-prevention
supervisor, that she did not want to go to another shareholder meeting,
because an employee kept sending her inappropriate messages at the last one.
Although she did not tell Parish at the time that the employee was Sands, in
her written statement she identified Sands as the harasser.  Ingersoll spoke
with Roger Parish and he confirmed what Blackwell had reported to him.

[4]When Ingersoll interviewed them, these two employees denied having been
intimate with Sands.

According to Brod, Blackwell was upset and fearful of Sands.

Brod also told Ingersoll that while Brod was en route to the 2005 shareholder meeting, Sands called her cell phone to ask when she would arrive at the hotel.  After Brod had arrived at her hotel room, Sands called again.  He asked her whether she was alone.  When she said that she was, he said that he was going to come see her.  Brod said that she avoided him.  In her written statement, Brod wrote: "In my [12 years at Wal-Mart], this the first and only time I've ever felt sexually threatened by anyone."  <u>See</u> Def.'s. App. at 159-160.

Ingersoll also interviewed Sands.  Claiming he misunderstood the question, Sands initially told Ingersoll that he had never been intimate with any employee or sent inappropriate text-messages to any employee.  He did recall Brod's complaint about rude treatment and told Ingersoll that he had handled the situation.  Later, Sands admitted to Ingersoll that he had had consensual sex with Blackwell about seven years ago and further that he had sent her sexual text-messages, but only in response to hers.  He told Ingersoll that he had nude photos of Blackwell that she had sent him and that he would provide those.  To date, Sands has not produced these photos.

Prior to making the decision to terminate Sands, Ingersoll consulted with Divisional Director Ron Lance, People Director Sonya Hostetler, and in-house legal counsel.  They all concurred with the decision to fire Sands.  Never during the course of the investigation did Sands ever mention to anyone that he thought he

was being singled out because of his age.

Brian Lemelin was hired to fill Sands's position.  At the time of his hire, he was forty-four years old.

IV.

### Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the

5

'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.   Applicable Legal Authorities

Because Sands relies upon only circumstantial evidence, as opposed to direct evidence,[5] to establish age discrimination, his claim must be analyzed under the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Greene, 411 U.S. 792 (1973). See, e.g., Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

This framework, in turn, requires plaintiff first to establish a prima facie case of age discrimination under the ADEA. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). That requires Sands to show that: (1) he was fired or demoted; (2) he was qualified for the position in question; and (3) he is a member a protected class (i.e. over the age of forty). See,

---

[5]Direct evidence of retaliation is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." See, e.g., Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (citation omitted). If a plaintiff produces direct evidence, "the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." Id. (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53 (1989)).

e.g., <u>Evans v. City of Houston</u>, 246 F.3d 344, 350 (5th Cir.

2001); <u>Bennett v. Total Minatome Corp.</u>, 138 F.3d 1053, 1060 (5th

Cir. 1998).   Further, a prima-facie case includes a fourth

element, which, contrary to the assertions of both parties,

requires Sands to provide evidence adequate to create an

inference that he was fired based upon his on age.[6]   See <u>O'Connor</u>

<u>v. Consol. Coin Caterer's Corp.</u>, 517 U.S. 308, 312 (1996).

     If Sands makes out prima-facie case, a presumption of

discrimination arises and the burden shifts to Wal-Mart to

_____

[6]What constitutes the fourth element of a prima-face case of age
discrimination is a source of considerable confusion among the parties and
perhaps, to some degree, in the Fifth Circuit as well.   Wal-Mart contends that
Sands must show that he "was replaced by someone outside the protected age
group or, alternatively, [that] others who were similarly situated to him and
not within his protected class were treated more favorably."   <u>See</u> Def.'s Br.
in Supp of Mot. for Summ. J. at 9-10.   The case cited by Wal-Mart for this
proposition, however, involves gender, not age, discrimination.   <u>See Septimus
v. Univ. of Houston</u>, 399 F.3d 601, 609 (5th Cir. 2005).   And, moreover, the
court has been unable to locate a single Fifth Circuit opinion using Wal-
Mart's formulation of the fourth element in the context of age discrimination.
Further, at least in the context of age discrimination, the Supreme Court has
expressly rejected the first alternative of Wal-Mart's proposed fourth element
-- i.e., "was replaced by someone outside the protected class" -- as an
appropriate element of the prima-facie case.   <u>See O'Connor v. Consol. Coin
Caterer's Corp.</u>, 517 U.S. 308, 312 (1996) ("The fact that one person in the
protected class has lost out to another person in the protected class is thus
irrelevant, so long as he has lost out <u>because of his age</u>.")

     In contrast, Sands urges that for fourth element he must show that he
"was either replaced by someone outside the protected class, replaced by
someone younger, or otherwise discharged because of his age."   <u>See</u> Pl.'s. Br.
in Supp. of Resp to Mot. for Summ. J. at 12-13.   This formulation is also
flawed.   The third alterative -- i.e. "otherwise discharged because of his
age" -- applies only when the plaintiff's job is eliminated and hence there is
no replacement.   <u>See</u>, <u>e.g.</u>, <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 83
(5th Cir. 1995).   Because Sands's position was filled by another, that is not
the case here.   In addition, as stated above, the Supreme Court has expressly
rejected the first alternative of Sands's proposed fourth element -- i.e.,
"replaced by someone outside the protected class" -- as an appropriate element
of the prima-facie case in the context of age discrimination.   <u>See O'Connor</u>,
517 U.S. at 312.

     The court thus rejects the fourth element of this claim as proposed by
both Wal-Mart and Sands.   The court believes that its statement of this
element is legally correct.   But, even if the court is wrong, whether Sands
has made out a prima-facie case of age discrimination in the end does not
matter.   Wal-Mart has stated a legitimate, non-discriminatory reason for
firing Sands and is entitled to summary judgment on that basis as well.

articulate a legitimate, non-discriminatory reason for its actions.  See Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995) (citations omitted).  If Wal-Mart meets this burden, the presumption in favor of Sands disappears, and Sands must then offer evidence sufficient to create an issue of material fact "'either (1) that [Wal-Mart's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Wal-Mart's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Sands's] protected characteristic (mixed-motive[s] alternative).'"  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (quoting Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp.2d 854, 865 (N.D.N.C. 2003)).

B.   Sands's Age Discrimination Claim Fails

      1.   No Prima-Facie Case

      The Supreme Court has held that the requisite inference of age discrimination necessary to meet the fourth element of a prima-facie case of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger."  O'Connor, 517 U.S. at 313.  That is the precise situation here.  Sands, a forty-five year old man, was replaced by Brian Lemelin, a forty-four year old man.[7]  A year, or possibly even less, of an age difference can only be termed

_____

[7]While Sands terms his replacement by Brian Lemelin a "dubious coincidence" and suggests that someone younger was in fact his replacement, Sands offers only his conclusory allegation in this regard.  See Pl.'s Br. in Supp. of Resp. to Mot. for Summ J. at 14.  A conclusory allegation is not competent summary-judgment proof.  See Simmons, 746 F.2d at 269.

8

insignificant.  <u>See</u>, <u>e.g.</u>, <u>Farmer v. Halliburton Co.</u>, 281 F.3d
1279 (5th Cir. 2001) (per curiam) (unpublished) (three year age
difference insignificant under <u>O'Connor</u>); <u>Grantham v. Albemarle
Corp.</u>, 244 F.3d 137 (5th Cir. 2000) (per curiam) (unpublished)
(twenty month and four month age differences insignificant under
<u>O'Connor</u>).  Because Sands has not made out a prima-facie case of
age discrimination, Wal-Mart is entitled to summary judgment.

    2.   <u>Wal-Mart Had a Legitimate,
           Non-Discriminatory Reason for Firing Sands</u>

Even had Sands stated a prima-facie case of age
discrimination, the court is amply satisfied that Wal-Mart would
still be entitled to summary judgment, because it had a legitimate
non-discriminatory reason for terminating Sands's employment.
<u>McDonnell Douglas</u>, 411 U.S. at 802.  Although Sands disputes that
he harassed anyone and further criticizes various aspects of
Ingersoll's investigation, <u>see</u> Pl.'s Br. in Supp. of Resp. to Mot.
for Summ. J. at 3-11, these issues are irrelevant:

> The real issue is whether the employer reasonably
> believed the employee's allegation and acted in good
> faith, or to the contrary, the employer did not
> actually believe the co-employee's allegation but
> instead used it as a pretext for an otherwise
> discriminatory dismissal.  Thus, the inquiry is limited
> to whether the employer believed the allegation in good
> faith and whether the decision to discharge was based
> upon that belief.

<u>Waggoner v. City of Garland, Texas</u>, 987 F.2d 1160, 1165-66 (5th
Cir. 1993).

Focusing on the relevant issue, the summary-judgment evidence
demonstrates that Wal-Mart, through the investigation conducted by
Ingersoll, had a solidly, good faith belief that Sands had engaged

in harassing conduct in violation of company policy.  Among other
things, Ingersoll reasonably found the female employees, Brod and
Blackwell, to be more credible than Sands, especially given that
Sands did not, at least from Ingersoll's perspective, and frankly
from the court's perspective as well, tell the truth about his
relationship with Blackwell and the sending of sexually suggestive
messages to her from the beginning.  Further, any challenge made
by Sands to whether Ingersoll/Wal-Mart had a good faith belief
that he had engaged in harassing conduct is made without the
benefit of any competent, summary-judgment evidence.  And evidence
demonstrating that Ingersoll/Wal-Mart "did not in good faith
believe the allegations, but relied upon them in bad faith pretext
to discriminate against him *on the basis of his age*" is essential
for Sands to defeat Wal-Mart's motion for summary judgment.
Waggoner, 987 F.2d at 1166.

In the end, Sands's only purported evidence of his age having
anything to do with his termination consists of the following: (1)
An idea a Wal-Mart employee floated in February 2005 of disbanding
Sands's investigative department, which just so happened to be
comprised of numerous persons over the age of forty; (2) the so-
called Chambers Memo; and (3) two Wal-Mart managers referring to
themselves and possibly others as the "'old, gray-haired, boot-
wearing guys,' who were not going to be around for long." See
Pl.'s Br. in Supp. of Resp. to Mot. for Summ. J. Mot.,
respectively, at 2-3, 17-18; 21-23; and 19-20.  Sands fails,
however, to show that any of this alleged evidence had any

connection whatsoever to his termination.

Specifically, his department was ultimately not disbanded, and, moreover, the only employee of his department age forty or older whom was fired was Sands.  Further, the Chambers Memo, drafted by Susan Chambers, Wal-Mart's vice president for benefits, merely discusses efforts being made to review and revise Wal-Mart's benefits strategy and, in that vein, makes generic references to various segments of Wal-Mart's workforce, including that segment that is aging.  <u>See</u> Pl.'s App. at 151.  Also, Susan Chambers was not involved in Sands's termination.  Finally, the comment about "old, gray-haired, boot-wearing guys" is a classic stray remark that is insufficient as a matter of law to establish age discrimination.  <u>See Waggoner</u>, 987 F.2d at 1166.

VI.

<u>Order</u>

For the reasons discussed above, the court concludes that Wal-Mart's motion for summary judgment should be granted. Therefore,

The court ORDERS that the above-captioned action be, and is hereby, dismissed with prejudice.

SIGNED June 1, 2007.

_____
JOHN McBRYDE
United States District Judge

11